IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ERIC ZEITLIN,

Case No. 1:20-cv-01067-CL

              Plaintiff,

        v.

OPINION AND ORDER

NATALIE M. WETENHALL,

              Defendant.

CLARKE, Magistrate Judge.

Plaintiff Eric Zeitlin brings this action against Defendant Natalie Wetenhall for alleged legal malpractice. Jurisdiction is proper in federal court pursuant to 28 USC § 1332 because there is diversity of citizenship between the parties and the amount in controversy is greater than $75,000.00. Full consent to magistrate jurisdiction was entered on December 2, 2022 (#45).

The case comes before the Court on the parties' cross-motions for Partial Summary Judgment (#32, #47). Oral argument was heard on March 23, 2023. For the reasons set forth below, the Defendant's Motion for Partial Summary Judgment (#32) is GRANTED, and Plaintiff's Motion for Partial Summary Judgment (#47) is DENIED.

## BACKGROUND

This case involves a series of transactions between Plaintiff and other non-parties to this suit, regarding a Property in Ashland, Oregon.[1]  Plaintiff originally purchased the Property on April 5, 2017, for $380,000.00. STT Group, LLC, a non-party to this suit, operated a recreational marijuana farm on the Property using an Oregon Liquor Control Commission ("OLCC") license obtained by STT.  When that arrangement was terminated, STT agreed to sell its farm assets to another LLC, which was owned by Gary Sowder ("Sowder"), a non-party to this suit. Compl. ¶¶ 5-6. As a part of this transaction, Plaintiff sold the Property to Sowder for $385,000.  In 2019, Sowder defaulted on the Land Sale Contract. Ex. 6.[2]  Sowder agreed to transfer the Property back to Plaintiff and also to transfer STT's farm assets, including the OLCC License, to Plaintiff.

In May 2019, Plaintiff retained the Defendant, attorney Natalie Wetenhall, to first renew the OLCC License, which was set to expire by its own terms in June of 2019, and second to obtain OLCC approval of the transfer of the marijuana farm assets, including the OLCC License, from Sowder to Plaintiff. Compl. at ¶ 10. Defendant filed paperwork to extend the OLCC License so that it would not expire in June of 2019, and the OLCC conditionally extended the term of the License from June 12, 2019 to June 12, 2020. Ex. 7. On June 18, 2019, Defendant's legal assistant submitted to the OLCC the application paperwork to approve the transfer of the farm assets, including the License, from Sowder to Plaintiff. Ex. 8.  On June 25, 2019, a representative from the OLCC advised the Defendant's office that the Change of Ownership Application was incomplete, and the fee of $250 needed to be paid. Compl. ¶ 13.  Defendant's

---

[1] For purposes of this opinion, factual allegations alleged in the Complaint (#1) are accepted as true and construed in favor of the Plaintiff, unless the Defendant has disputed them or evidence in the record indicates a dispute of fact.

[2] All exhibits referenced in this section are Defendant's Exhibits, attached to the Motion for Partial Summary Judgment (#32), unless otherwise indicated.

paralegal notified Plaintiff that a new Application filing fee of $250 would be needed, via an email on June 27, 2019. Ex. 15 (#51). The paralegal advised Plaintiff that Defendant would discuss the filing fee with Plaintiff during their telephone conference scheduled for later that same day. *Id.* The parties dispute who had responsibility for paying the $250 filing fee as a result of that phone call.

On August 19, 2019, in anticipation of the OLCC approving the License transfer to Plaintiff, Plaintiff sold the Property and the License to another non-party to this suit, Rama Schafer for $589,000. Ex. 9. Under the Contract of Sale, Schafer paid $85,000 down and was to make payments over time. *Id.*

Schafer contacted the OLCC on February 11, 2020, claiming that he was the manager of the Property. Ex.10, p.1. Because the transfer paperwork had never been processed and approved, Schafer was not listed in the OLCC METRC System as a manager, owner, or worker; thus, the OLCC investigator, Shane McDonough, became concerned. Ex.10, p.1. McDonough contacted Sowder, who stated that he thought a Change of Ownership form had been submitted in June of 2019. *Id.* p.2. On February 25, 2020, McDonough met with Defendant and Sowder at the OLCC office to review compliance concerns. *Id.* McDonough noted that a Change of Ownership Application had been submitted but the $250 fee had not been paid. *Id.*

On February 26, 2020, McDonough met with Sowder at the Property, the OLCC "licensed premises," to verify that surveillance and security for the premises complied with OLCC rules. *Id.* p.3. McDonough reported that not all cameras were functioning, as required by the rules. *Id.* The cameras had not been recording for quite a while because one of the internet cables had been severed. *Id.* Once the internet connection was restored, a majority of the cameras began functioning. However, five cameras were not operational at the time of the inspection. *Id.*

McDonough also found significant violations due to the delay in the transfer of the License. Compl. at ¶ 17.

On February 28, 2020, Defendant emailed Plaintiff a disengagement letter alleging that Plaintiff had engaged in criminal activity on the property because he did not have a valid OLCC license at that time. Compl. at ¶ 18. On February 29, 2020, Sowder submitted a Request to Surrender the License due, in part, to the disconnection of the camera system and other OLCC violations found during the inspection of the premises. Ex. 10, p.3; Ex. 12. McDonough recommended processing the surrender and issuing a letter of reprimand to the License file. *Id*.

Schafer defaulted on his Contract with Plaintiff and moved out in April of 2020. Ex. 2; Pltf. Dep. Tr. p. 27. Schafer paid Plaintiff the $85,000 down payment and six payments of $3,000 per month from October 2019 to March 2020 before he vacated the property. *Id*. pp.123-124. Schafer thus paid Plaintiff a total sum of $103,000.

On or about March 4, 2020, Plaintiff had a conference call meeting with the OLCC investigator and he claims that he only then discovered the mistakes Defendant had made and failed to correct. On this call, Plaintiff was informed the failure to properly complete the application transfer paperwork would cause the OLCC to "blacklist" Plaintiff and prohibit the OLCC from being able to issue Plaintiff a license at any point in the future. Compl. at ¶ 19. On March 25, 2020, Plaintiff received an email from the OLCC that included the email they had sent to Defendant on June 25, 2019, which Plaintiff alleges Defendant did not disclose to Plaintiff at the time of receipt. The OLCC informed Plaintiff that the errors were so substantial that he is unable to obtain a Tier 2 license. *Id*. at ¶ 21. On March 25, 2022, Plaintiff sold the Property to Samantha and Tim Deidrick for $528,000. Ex. 13.

### LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff alleges a single claim for relief, legal malpractice. Both Plaintiff and Defendant move for partial summary judgment. For the reasons below, the Defendant's motion is granted, and Plaintiff's motion is denied.

**I.    Defendant's motion for partial summary judgment is GRANTED.**

Plaintiff's prayer for relief includes a request "for $1,700,000.00 for attorney fees charged by Defendant, application fees, transfer fees, the purchase price of the property, the improvements made to the property, and the contracts with employees." The prayer for relief does not delineate specified damages within this broader category, but the factual allegations provide more specified information. Defendant moves for summary judgment against three specific claims for damages contained in the allegations of the Complaint:

1. $680,000 related to the Shafer transaction;
2. $750,000 related to the Sowder transaction; and
3. $250,000 for property upgrades and equipment.

The Defendant claims that, even if Plaintiff can prove that Defendant is liable for legal malpractice, these specified damages were not caused by the Defendant, nor were they even incurred by Plaintiff.

In order to prevail on a legal malpractice action, a plaintiff must allege and prove: (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, i.e., a causal link between the breach of duty and the harm. *Watson v. Meltzer*, 247 Or App 558-565, 270 P.3d 289(2011); *Sheretz v. Brownstein Rask*, 314 Or App 331, 339, 498 P.3d 850 (2021). In a legal malpractice action, causation requires proof that the result would have been different but for the negligence. *Watson*, 247 Or App. 565. A plaintiff must establish that he would have obtained a more favorable result. *Id.* at 566.

Additionally, "the doctrine of avoidable consequences places the victim of a tort under a disability to collect for losses that the victim could have avoided by reasonable conduct." *Colonial Banking Co. v. Mountain Title Co.*, 94 Or. App. 491, 495, 766 P.2d 411, 413 (1988). *See Blair v. United Finance Co.*, 235 Or. 89, 91, 383 P.2d 72 (1963); *United States v. Firchau*,

234 Or. 241, 249–250, 380 P.2d 800 (1963). The Ninth Circuit Manual of Model Civil Jury

Instructions is also instructive. On the issue of damages, the instruction for damages, generally,

states: "[t]he plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate

means to avoid or reduce damages." 6.6; 5.3. Similarly, the Oregon Uniform Civil Jury

Instructions provides, "A person who suffered damages has a duty to exercise reasonable care to

avoid increasing that damage. There can be no recovery for increased damage caused by the

failure to exercise such care." UCJI No. 73.01.

### a. Defendant is entitled to summary judgment and dismissal of Plaintiff's claim for $680,000 related to the Schafer transaction.

The undisputed facts indicate that Plaintiff retained the Defendant as his attorney to assist

with the License Change of Ownership Application. In anticipation of that application being

processed and approved, Plaintiff sold the Property and the License to Schafer for $589,000.

Thus, we know what would have happened had the alleged negligence not occurred and the

Change of Ownership Application been processed and approved: the sale to Schafer would have

been completed, the OLCC license would have been transferred, and Plaintiff would have

obtained $589,000. Instead, Sowder surrendered the OLCC License. With no valid OLCC

approval or License to run the marijuana farm on the Property, Schafer defaulted on his Contract

with Plaintiff and moved out in April of 2020. Schafer paid Plaintiff the $85,000 down payment

and six payments of $3,000 per month from October 2019 to March 2020 before he vacated the

property, for a total sum of $103,000. If the analysis ended there, Plaintiff might be entitled to

the difference in the expected amount of $589,000 and the actual amount of $103,000.

However, on March 25, 2022, Plaintiff sold the Property to the Deidricks for $528,000.

Adding those two actual sums together, Plaintiff received $631,000 for the Property, instead of

the $589,000 he contracted from Schafer. In other words, he cannot establish "that he would

have obtained a more favorable result" if the sale to Schafer had been completed, because he was paid more money than that contract was worth.

Plaintiff argues that the Defendant should not receive the benefit of a better real estate market, and any improvements Plaintiff allegedly made in the interim between the sales, but, as discussed above, Plaintiff had a duty to mitigate his harm. Any increase in the real estate market and, therefore in the sale price, was a benefit to Plaintiff himself, and here that serves to mitigate the damages he seeks from the Defendant. Defendant is entitled to summary judgment and dismissal of Plaintiff's claim for $680,000 related to the Schafer transaction.

### b. Defendant is entitled to summary judgment and dismissal of Plaintiff's claim for $750,000 related to the Sowder transaction.

Defendant is entitled to summary judgment and dismissal of Plaintiff's claim for $750,000 related to the Sowder transaction. Plaintiff alleges that Defendant was hired to negotiate a contract to transfer ownership of the marijuana farm and the OLCC License from STT and Plaintiff to Sowder. Plaintiff asserts that Defendant "represented both Plaintiff and Mr. Sowder in the transaction," and that Defendant and Sowder were engaged in a romantic relationship. Importantly, Plaintiff then alleges that "In or about March 2019, Mr. Sowder and Plaintiff agreed to transfer the license from Mr. Sowder's name into Plaintiffs name **due to Mr. Sowder breaching the prior contract.**" Compl. ¶ 9 (emphasis added). The allegations then shift to focus on Defendant's failure to properly apply to transfer the License, which impacted the next sale to Schafer. No allegations ever discuss how or why Sowder breached the contract and defaulted on the sale, nor do they discuss how Defendant caused that transaction to fall through.

Later, Plaintiff asserts that Defendant was negligent by "including an 'insurance policy' in the form of a statutory warranty deed for the sole benefit of Mr. Sowder without explaining the legal consequences and significance." Compl. ¶ 23, ¶ 32(f). No specific factual allegations

support this conclusory claim, and nothing indicates how this alleged statutory warranty deed functioned in such a way that Defendant should be liable for the damages caused by Sowder's default.

Finally, Plaintiff responds to the motion by identifying the errors made by Defendant within the Sowder contract and regarding that transaction. Plaintiff may indeed be able to show that Defendant was negligent in her representation of Plaintiff in that transaction, but none of the allegations identify why she should be held liable for the sale price of the contract when the undisputed facts are that Sowder defaulted on the sale. Defendant is entitled to summary judgment, and this claim for damages is dismissed.

### c. Defendant is entitled to summary judgment and dismissal of Plaintiff's claim for $250,000 for property upgrades and equipment.

Plaintiff alleges that he "invested a significant amount of money in the property including installing cameras, gates, fencing, additional security features, irrigation lines, underground electrical wiring, fertilizer, and dirt to properly prepare the ground for growing." Compl. ¶ 30. He claims he spent $250,000 on property upgrades and equipment. Defendant moves for summary judgment as to these alleged damages because, even if Plaintiff did make improvements to the Property, these were sold to Schafer and then to the Deidricks and Plaintiff received the value in the amount of money he received from both of these transactions.

Plaintiff argues that the final sale price of the property was greatly diminished by the lack of an approved OLCC License to operate a recreational marijuana farm on the premises. This argument ignores the fact that the sale price of $589,000 to Schafer included the "sale" of the OLCC License (notwithstanding that under OLCC rules, a License is not an asset that can be sold without pre-approval). Therefore, the calculation of whether or not Plaintiff was in a better or worse position after that transaction fell through and he was forced to sell the Property to

someone else includes the OLCC License and its potential value, along with all of the improvements to the Property. Plaintiff ultimately received more than $589,000. Therefore, he was not damaged as to the sale price of the Property and the License. He cannot recover damages that he did not incur. This claim is dismissed.

## II.    Plaintiff's motion for partial summary judgment should be denied.

The standard for a claim of legal malpractice is discussed above. Plaintiff moves for partial summary judgment on the issues of duty, breach, and causation as to Defendant's alleged legal malpractice, or negligence; he concedes that a dispute of material fact exists as to damages. The parties agree that Defendant had a duty of care to represent Plaintiff as his attorney.

Plaintiff asserts that Defendant was negligent for failing to submit proper paperwork for the License Transfer Application documents to the OLCC and failing to pay the fee associated with the filing. Plaintiff also claims that Defendant breached her duty of care to keep Plaintiff reasonably informed of the status of the application, failing to inform Plaintiff when she found out that the paperwork and fee had not been processed, and failing to rectify and resubmit the License application without error. In support, Plaintiff submits the transcript of Defendant's deposition testimony, which states:

> Q. So that was a responsibility your office did? Even though it was Jessica that did it, it
> was still your office; right?
> A. Yes, it was.
> Q. And you take responsibility for whatever Jessica did as your employee; right?
> A. I do.

Wetenall Dep. 53:1-7 (#47). Plaintiff submitted five more pages of the transcript of the Defendant's deposition, but the motion does not cite to any part, other than the quotation above.

Defendant does not dispute that the paperwork was incorrectly completed, and the fee was not paid on time, but she does dispute the issue of notice, and she claims that Plaintiff had

the opportunity to rectify the problems with the application and he chose not to do so. Additionally, Defendant argues that, even if she failed to complete the paperwork and pay the fee, this was not a material breach.

First, Defendant submits evidence to show that Defendant's office notified Plaintiff that a new Application filing fee of $250 would be needed, via an email on June 27, 2019. Ex. 15 (#51). Defendant's paralegal advised Plaintiff that Defendant would discuss the filing fee with Plaintiff during their telephone conference scheduled for later that same day. *Id.* The parties dispute who had responsibility for paying the $250 filing fee. This dispute of fact precludes summary judgment as to the alleged breach for failure to pay the fee.

Second, based on the email referenced above, Defendant disputes Plaintiff's allegations that she failed to inform him of the failure to pay the fee and failed to rectify the problems with the application. Defendant asserts that, after Defendant withdrew as Plaintiff's attorney, Plaintiff had from February 27, 2020, through June 12, 2020, and he could have remedied the problems with the application himself during that time. This dispute of fact precludes summary judgment as to the Defendant's alleged breach for on these reasons as well.

Third, Defendant argues that there is no evidence of causation that links Defendant's alleged negligence and any harm to the Plaintiff. Defendant asserts that the real reason the OLCC transfer application could not ultimately be completed was due to Sowder's surrender of the OLCC License for reasons that had nothing to do with Defendant. These reasons included the numerous violations reported during the compliance inspection by McDonough, and Sowder's concern that he could get into trouble for these violations because it was his name that continued to be on the License.

In particular, Defendant submits that Plaintiff and Schafer failed to comply with the OLCC's 24-hour Video Surveillance System requirements set forth in Section 8.4 of the Marijuana Producer Application, and this was a major concern for the McDonough. According to the OLCC Investigator's Report, the video cameras were not functioning at all when he arrived for the site inspection. Ex.10, p.3. A cable connecting the video cameras had been severed by Schafer when he was changing the layout of the grow site, without prior OLCC approval. *Id.* Due to these concerns and violations, which were caused by the actions and inactions of Plaintiff and Schafer, Defendant claims Sowder did not want to be involved or have anything further to do with the transfer of the License or operation of the farm. Therefore, the surrender of the License had nothing to do with Defendant's actions or her failure to complete the transfer paperwork or fee. The Court finds this evidence is sufficient to preclude summary judgment on liability for legal malpractice.[3]

## ORDER

For all the reasons above, the Defendant's Motion for Partial Summary Judgment (#32) is GRANTED as to specified claims for damages. Plaintiff's Motion for Partial Summary Judgment as to liability is DENIED.

DATED this 23 day of June, 2023.

MARK D. CLARKE
United States Magistrate Judge

---

[3] Summary judgment is also precluded for lack of causation because the Court cannot determine whether Defendant caused the Plaintiff's damages without knowing what those damages are. Here, we have determined above that several of Plaintiff's claims for specific damages fail as a matter of law. For this alternative reason, summary judgment as to liability cannot be granted.